UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASTRO BUILDING SUPPLIES, INC.,

        Plaintiff/Appellant,

v.

FRANK J. SLAVIK III,

        Defendant/Appellee.

_____/

Case No. 10-11332

Honorable Nancy G. Edmunds

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY JUDGE'S
MARCH 26, 2010 ORDER GRANTING APPELLEE'S MOTION FOR
SUMMARY JUDGMENT, DENYING APPELLANT'S CROSS MOTION
FOR SUMMARY JUDGEMENT, AND DENYING AS MOOT
APPELLANT'S MOTION TO COMPEL AND EXTEND THE SCHEDULE
OF THE CASE [1]**

This is an appeal from an order issued by the Bankruptcy Court in an adversary

proceeding brought by Appellant Astro Building Supplies, Inc. (Astro) seeking a

determination that the debt owed to it by Appellee Frank J. Slavik, III (Slavik) was not

dischargeable in Slavik's Chapter 7 bankruptcy proceeding.

For the reasons stated below, this Court AFFIRMS the Bankruptcy Court's March 26,

2010 order granting Slavik's motion for summary judgment, denying Astro's cross motion

for summary judgment, and denying as moot Astro's motion to compel and extend the

schedule of the case.

**I.    Jurisdiction**

Appellate jurisdiction is conferred on this Court by 11 U.S.C. § 158(a)(1) which states,

"[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final

judgments, orders, decrees; of bankruptcy judges under Section 157 of this title. An Appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II.   Appellate Standard of Review

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo. Westbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

## III.   Facts

Slavik owned and operated F&C Construction, Inc., a construction company primarily engaged in the installation and repair of residential roofs. Astro is a supplier of building materials and construction supplies (supplies). Between July 2003 and August 2007, Astro maintained an "open account"[1] whereby it provided Slavik with supplies that were used on approximately 400-500 different residential roofing projects.

Astro's customer account statement shows that it sent Slavik invoices and Slavik, in turn, remitted payments. From 2003 until Slavik went out of business in 2007, there was a continuous exchange of invoices and payments. The payments, however, did not

---

[1] An "open account" or "line of credit" is a type of open-ended credit arrangement whereby a materialman delivers supplies to a contractor for use in whatever projects the contractor undertakes and payment is received from the ongoing proceeds generated by the contractor's business. Astro also attached the affidavit of one of its corporate officer's, Donald Speer, to its supplemental brief in response to Slavik's motion for summary judgment. Speer's affidavit appears to be a copy of an attachment to a complaint that Astro filed in state court. In that affidavit, Speer states that Astro "sold [Slavik] materials which [Slavik] request on *open account*." (Speer Aff.¶ 3, Pl.'s Supp. Resp., Ex. 6 at 11 [Docket Text # 47] (emphasis added).)

necessarily correspond to a particular invoice, but were applied to several invoices and partial invoices.[2] In other words, as payments were made during this period, Astro applied the payments to the "running balance"[3] on Slavik's account. In all, Slavik purchased $1,063,426.90[4] in supplies from Astro and made $985,652.59 in payments to them. And, at the time Slavik closed his business, he owed Astro $77,774.31.[5]

In October 2007, Astro filed a lawsuit against Slavik in state court to recover the amount owed on Slavik's account. In its seven-count complaint, Astro alleged claims for: (1) account stated; (2) action for the price, pursuant to Mich. Comp. Laws § 440.2709; (3) breach of contract; (4) violation of the Michigan Building Contract Fund Act (which is sometimes referred to as the "Michigan Builders Trust Fund Act" (MBTFA)), Mich. Comp. Laws § 570.151, *et seq.*; (5) unjust enrichment; (6) breach of personal guaranty; and (7) conversion. Astro subsequently obtained a default judgment against Slavik. The default judgment, however, was set aside pursuant to a consent judgment voluntarily entered into by Astro and Slavik in the amount of $79,180.58. The consent judgment did not indicate which legal theory gave rise to the damages.

---

[2] (Crawley Aff.¶ 5, Pl.'s Resp. at 15 [Docket Text # 41]) ("The money that is owes [sic] dates back to approximately the beginning of February 2007, when applying the Defendant's payments to the oldest invoice remaining open at the time of the payment.").)

[3] Astro's "Customer History Report" tracking Slavik's account displays the total amount owed in a column titled "Running Bal[ance]." (*See* Pl.'s Resp. [Docket Text # 41], Exs. 3, 5.)

[4] Slavik actually made purchases of $1,111,207.99 on his account. After credits for returns totaling $47,781.08 is subtracted from his purchases, a total purchase amount of $1,063,426.90 remains.

[5] According to Astro, Slavik owed it $83,783.67 when he went out of business. Slavik was later credited $6,009.36, leaving a balance of $77,774.31.

On October 28, 2008, Slavik filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. Included on Slavik's Schedule F (creditors holding unsecured nonpriority claims) was an $80,000 claim owed to Astro described as "2005-2006 open account for business inventory, parts and supplies," referring to Astro's $79,180.58 state-court judgment against him personally as a debt to be discharged in bankruptcy.

On December 18, 2008, Astro brought an adversary proceeding in the Bankruptcy Court against Slavik contesting the dischargeability of the debt. In its two-count complaint, Astro alleged that—because Slavik violated the MBTFA—the debt owed to it was nondischargeable under 11 U.S.C. § 523(a)(4), and alternatively claimed that—because Slavik failed to keep adequate records—the Bankruptcy Court should deny Slavik a discharge entirely pursuant to 11 U.S.C. § 727(a)(3).

Slavik failed to respond to the adversary proceeding and, on January 28, 2009, a default judgment declaring the debt nondischargeable was entered against him. Astro's alternative claim, that Slavik be denied a discharge entirely, was implicitly dismissed by entry of the default judgment. On February 25, 2009, Slavik filed a motion to reopen the adversary proceeding, which was granted on April 1, 2009. And, on April 6, 2010, Slavik filed a motion to set aside the default judgment, which was granted on May 13, 2009 over Astro's objections. On May 29, 2009, Astro filed an amended complaint which Slavik answered on June 8, 2009. On June 16, 2009, the Bankruptcy Court issued a scheduling order setting a discovery cut-off date of December 31, 2009 and a dispositive motion deadline of January 31, 2009.

Approximately one month after the close of discovery, on January 28, 2010, Astro filed a motion to compel production of documents and to extend the schedule of the case. Slavik

and Astro filed cross motions for summary judgment, on January 29, 2010 and February 1, 2010 respectively. The three motions were consolidated and scheduled for hearing on March 16, 2010.

The Bankruptcy Court heard oral argument on the motions and issued a written opinion on March 26, 2010 granting Slavik's motion for summary judgment, denying Astro's motion for summary judgment, and denying Astro's motion to compel and extend the schedule of the case. In that opinion, the Bankruptcy Court held: (1) that the debt was dischargeable under 11 U.S.C. § 523(a)(4) because Astro failed to establish the existence of a trust under the MBTFA; (2) that Astro was not entitled to an accounting because it failed to establish the existence of a fiduciary relationship or trust res, and its motion to compel was, thus, moot; and (3) that Astro failed to establish a prima facie case that Slavik failed to keep adequate records in violation of 11 U.S.C. § 727(a)(3).

Astro's timely appeal of the Bankruptcy Court's order is now before the Court.

## IV. Analysis

In this appeal, Astro raises six issues:

Issue One: Whether the Bankruptcy Court committed reversible error by determining Plaintiff must establish that Defendant used supplies provided by Plaintiff in specific construction projects, that Defendant was paid by his customers for the specific projects in which those supplies were used and that Defendant failed to pass those payments on to Plaintiff, under Michigan Builder's Trust Fund Act and 11 USC 523(a)4?

Issue Two: Whether the Bankruptcy Court committed reversible error by refusing to hear Plaintiff's Motion to Compel Discovery from Defendant including production of his records and an accounting for what it is that Defendant did with the money which the Defendant received and admitted receiving from the construction projects worked on by Defendant, refusing to require the Defendant to produce these records and refusing to allow the Plaintiff to pursue this information from the Defendant's contractor and considering Plaintiff's Motion moot?

Issue Three: Whether the Bankruptcy Court committed reversible error by determining that it is not enough to establish Defendant as the Plaintiff's fiduciary for the Plaintiff to establish that Defendant is a contractor; Defendant received Plaintiff's construction supplies for Defendant's construction projects; Defendant was paid all or almost all of money due to him on the construction projects; and, Defendant failed to pass on to Plaintiff enough of those payments to fully pay the Plaintiff, and require an accounting of the money which the Defendant received?

Issue Four: Whether the Bankruptcy Court committed reversible error by determining "[b]ecause plaintiff cannot identify any specific projects for which defendant was holding funds in trust, defendant need not produce an accounting" and refusing to hear Plaintiff's Motion to Compel Discovery from Defendant concluding "there is no amount of discovery which you could create a prima facie case on these facts" including the accounting of that Defendant did with the money and obtaining records from Defendant's general contractor, considering Plaintiff's Motion moot?

Issue Five: Whether the Bankruptcy Court committed reversible error when the court determined that Plaintiff proffers no evidence that Defendant received payments from customers on specific projects, when the Defendant testified under oath that he was paid on most of the subject roof construction projects and the court refused to order the Defendant to produce its records or disclose what those payments were?

Issue Six: Whether the Bankruptcy Court committed reversible error when the court dismissed Plaintiff's claim under 11 USC 727(a)3 for lost or destroyed records where Defendant testified that he intentionally threw his records away including customer checking account and bank records?

(Appellant's Br. at 4-5.)

The primary question presented here addresses the manner in which a trust under the MBTFA may be created. The Court must specifically decide whether a trust is created under the MBTFA where a materialman, purporting to be a trust beneficiary, is unable to identify a specific project for which a contractor received building contract funds and used supplies provided by that materialman. This appeal requires the Court to interpret the

MBTFA and its interplay with § 523(a)(4) of the Bankruptcy Code and, therefore, involves conclusions of law that are reviewed *de novo*.

The Court first addresses the issue of nondischargeability under 11 U.S.C. § 523(a)(4) for violations of the MBTFA.

### A. Bankruptcy Code's Defalcation Provision

Bankruptcy is designed to provide debtors with a fresh start: "whatever assets a debtor has are allocated among his creditors and, even though they rarely cover all liabilities, he emerges with no outstanding debts." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 966 (6th Cir. 2009). But there are exceptions to that rule, and this appeal addresses one such exception.

Section 523(a)(4) of the Bankruptcy Code excludes from discharge debts incurred by "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The Sixth Circuit has defined "defalcation" to include "the failure to properly account for" funds held in trust. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005).

> This exception for "defalcation while acting in a fiduciary capacity" follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees.

*In re Patel*, 565 F.3d at 967-68. To "find a debt nondischargeable under § 523(a)(4) due to defalcation," there must be "proof by a preponderance of the evidence of the following: (1) a pre-existing fiduciary relationship, (2) breach of that fiduciary relationship, and (3) a resulting loss." *In re Blaszak*, 397 F.3d at 390.

The Sixth Circuit, however, construes the phrase "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrowly.

> Application is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor. The Sixth Circuit has refused to extend the provision to constructive or implied trusts imposed by operation of law as a matter of equity.

*Shafer Redi-Mix, Inc. v. Craft*, 414 B.R. 165, 171 (Bankr. W.D. Mich. 2009) (internal quotations and citations omitted). To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Blaszak*, 397 F.3d at 391-92.

A statute may create a trust for purposes of § 523(a)(4) if that statute: (1) defines the trust res; (2) imposes duties on the trustee; and (3) those duties exist prior to any act of wrongdoing. *Shafer*, 414 B.R. at 171. In the instant matter, Astro relies on the MBTFA to create a trust for purposes of § 523(a)(4). *See, e.g., Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 742 N.W.2d 140, 143 (Mich. Ct. App. 2007), *lv. denied*, 742 N.W.2d 363, 364 (Mich. 2007) (holding that the MBTFA "imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts").

### 1. Michigan Builders Trust Fund Act and 11 U.S.C. § 523(a)(4)

The Michigan Builders Trust Fund Act (MBTFA), Mich. Comp. Laws § 570.151 *et seq.*, "was originally passed in 1931 as a Depression-era measure to afford additional protection to subcontractors and materialmen." *DiPonio Constr. Co., Inc. v. Rosati Masonry Co., Inc.*, 631 N.W.2d 59, 63 (Mich. Ct. App. 2001) (internal quotation and citation omitted).

> During that era, builders often undertook construction projects that were larger than their ability to finance. Therefore, builders often paid suppliers and materialmen on older projects with the funds received on more current operations. When difficult economic times arrived, the builders became

> insolvent and many subcontractors and materialmen were never paid. In light
> of this history, it is clear that the design of the act is to prevent contractors
> from juggling funds between unrelated projects.

*Id.* (internal quotations and citations omitted). The MBTFA imposes a "trust upon the building contract fund paid by any person to a contractor." *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 252 (6th Cir. 1982). Under the statute, the trust res is defined as the funds paid by a person to the contractor into the building contract fund. *Id.*

> The effect of this statute is to impose a trust, with the contractor operating as
> the trustee, upon the funds paid by any person in connection with a building
> contract. And from a purely legal standpoint, it is proper to equate a violation
> of the Michigan Builder's Trust Fund Act to that of an act of defalcation while
> acting in a fiduciary capacity as applied to § 523(a)(4).

*Behler-Young Co. v. Cousino (In re Cousino)*, 364 B.R. 289, 293 (Bankr. N.D. Ohio 2006) (internal citation and footnote omitted). Accordingly, bankruptcy courts have concluded that when a debtor violates the MBTFA in his capacity as a contractor and fiduciary of the building contract fund, the resulting debt may be nondischargeable pursuant to 11 U.S.C. § 523(a)(4). *See, e.g., Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994); *Kriegish v. Lipan (In re Kriegish)*, 275 B.R. 838 (Bankr. E.D. Mich. 2002).

### a. Creation of a Trust

Under the MBTFA, a contractor engaged in Michigan's building construction industry is prohibited from retaining or otherwise distributing construction payments made on a project until all laborers, subcontractors, and materialmen have first been paid. The MBTFA specifically provides:

> Sec. 1. In the building construction industry, the building contract fund paid by
> any person to a contractor ... shall be considered ... to be a trust fund, for the
> benefit of the person making the payment, contractors, laborers, subcontractors

or materialmen, and the contractor ... shall be considered the trustee of all funds so paid to him for building construction purposes.

Sec. 2. Any contractor ... engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part thereof, or any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the *specific improvement*, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid ...

Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

Mich. Comp. Laws §§ 570.151-.153 (emphasis added). "In other words, the MBTFA makes the general contractor a trustee of *project funds* and imposes on him the duty to pay the beneficiaries—the [laborers, subcontractors, and materialmen]—before himself and his employees and before paying any other expenses." *In re Patel*, 565 F.3d at 969 (emphasis added).

Although the MBTFA[6] "is penal statute that does not expressly provide a civil cause of action, ... [the] Michigan Supreme Court has long recognized a civil cause of action for violation of provisions of the act." *DiPonio*, 631 N.W.2d at 62. The prima facie elements of a civil cause of action brought pursuant to the MBTFA include:

(1) the defendant is a contractor ... engaged in the building construction industry, (2) a person paid the contractor ... for labor or materials provided on *the construction project*, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers,

_____

[6] The MBTFA is also remedial in nature, is construed liberally and "supplements those remedies provided by the mechanics' lien statute, M.C.L. § 570.185 *et seq.*" *DiPonio*, 631 N.W.2d at 63.

subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for *the specific project*.

*DiPonio*, 631 N.W.2d at 62 (emphasis added). *See also People v. Brown*, 610 N.W.2d 234, 236-37 (Mich. Ct. App. 2000) ("[T]he ... MBTFA ... prohibits a building contractor from retaining or using construction payments from a *particular project* until all laborers, subcontractors, and materialmen who worked on the project have been paid.") (emphasis added); *In re Johnson*, 691 F.2d at 252 (holding that the MBTFA imposes a duty upon the contractor receiving the payments to act as trustee "to use the money in the building contract fund to first pay laborers, subcontractors and materialmen on the *particular project* for which the funds were deposited before he uses the fund for any other purpose") (emphasis added); *Behler-Young Co. v. A.C. Beaudry, Inc.*, No. 277775, 2008 WL 4367525, at *7 (Mich. Ct. App. Sept. 25, 2008) ("Even assuming that ... defendants admitted to violating the MB[T]FA, generally all that would mean is that defendants admitted that they were paid for labor and materials provided on a *specific construction project*, and they retained or used those funds, or part of them, for any purpose other than to first pay plaintiff, who was engaged by defendants to perform labor or furnish material for that *specific project*.") (emphasis added). In other words—and contrary to Astro's contention—to prevail on a MBTFA claim, a plaintiff must establish that it provided supplies to the defendant contractor for use on a specific construction project, that the defendant contractor was paid by its customer for the specific construction project where those

supplies were used, and that the defendant contractor failed to pass on the payment it

received from that specific project to the plaintiff.[7]

Astro, on the other hand, argues that the mere fact that it provided materials to Slavik

to be used on any construction project and the fact that it has not been paid for those

materials entitles it to protection under the MBTFA.[8] *See* Pl.'s Supp. Resp. at 4 [Docket

---

[7] The fiduciary relationship recognized by the MBTFA is not inherent in building construction transactions. Instead, it only arises "at the time any monies are paid to the contractor ... whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid." *In re Johnson*, 691 F.2d at 253. And, "[u]ntil some person makes a payment into the building contract fund, the contractor or subcontractor is liable to suppliers and laborers solely based on contract." *Id.*
The MBTFA is, therefore, triggered by the payment of funds (i.e., the funds deemed to be held in trust for the benefit on laborers, subcontractors, and materialmen) on a specific project to a contractor and a statutory trust is created at that moment. The contractor then becomes a fiduciary with a duty to disburse the funds as mandated by the MBTFA: to first pay laborers, subcontractors and materialmen who have outstanding invoices for labor and materials consumed on that project. *See In re Kriegish*, 25 B.R. at 844 ("Upon receiving funds for a construction project, the contractor ... becomes a trustee for the project, with the trust assets being distinct from the contractor's corporate assets for bankruptcy purposes."); *see also In re Patel*, 565 F.3d at 969 (quoting *In re Johnson*, 691 F.2d at 253).

[8] Astro also argues that Slavik's statement on December 11, 2008—admitting the he is a contractor and generally acknowledging that he was paid for many of the projects for which he received supplies from Astro—is sufficient to create a trust.

> Even by his own testimony, the Defendant has admitted that he owes money to the Plaintiff which he has not paid the Plaintiff and for which he has been paid. Pursuant to the act, the Defendant has committed fraud, breached his fiduciary duty to the Plaintiff and converted the Plaintiff's money and assets.

(Appellant's Br. at 7.) This, too, is an erroneous interpretation of the MBTFA. As discussed below, Astro must establish that Slavik received payments on a specific project or projects for which it provided materials. Here, Astro made no such showing. And, a review of the transcript from that hearing does not provide sufficient evidence to identify a specific project that Astro provided supplies where Slavik received payment.

> Q: Did you–do you know what jobs you used the supplies and materials from–that you purchased from Astro Building Supplies, what jobs that–those supplies were used on?
> A: Off the top of my hear ... [n]o. ...
> Q: ... On any of those jobs where you used Astro Building Supplies, the materials that you purchased from them, were you in fact not paid on those

Text # 47] (according to Astro, "there is no case that indicates that the Plaintiff must establish a specific project where their supplies were used. Second, there is no case that indicates that the Plaintiff must establish that the Defendant was paid. Rather, both of these issues are for the Defendant to prove or disprove. The Defendant has not done so").)This is simply an erroneous interpretation of the MBTFA and its corresponding case law. It is not the mere provision of supplies to a contractor which creates a trust, it is instead the payment of funds on a specific project where those supplies were consumed which creates the trust under the MBTFA.

This principle was recently addressed in *Shafer Redi-Mix, Inc. v. Craft*, 414 B.R. 165, 171 (Bankr. W.D. Mich. 2009). In *Shafer* a concrete contractor, Craft, filed for bankruptcy and one of its materialmen, Shafer Redi-Mix, instituted an adversary proceeding against it to determine whether or not the debt Craft owed was dischargeable. *Shafer*, 414 B.R. at

-----

jobs?
A: There would be a couple. ...
Q: Can you identify what particular jobs those were?
A: ... No.
The fact that Slavik acknowledged that he received payment on some projects is simply insufficient to establish a trust under the MBTFA, and any holding to the contrary would create an absurd result. Under the MBTFA, a trust is only imposed after it has first been established that a payment was received on a specific project and that trust only protects those laborers, subcontractors and materialmen who participated in that particular project. The mere fact that Slavik received payment on some projects, or even most projects, does not automatically establish a trust encompassing every project Slavik performed, every payment received, and every supply utilized. Otherwise, any laborer, subcontractor, or materialman who participated on any construction project may attempt to impose a trust and seek protection as a beneficiary of that trust on projects to which that laborer, subcontractor, or materialman had no involvement. Again, the proponent of a trust must identify the specific project that it participated in where the defendant contractor received payment. Because Astro provided no evidence to identify any specific project that Slavik utilized Astro's supplies and also received payment, it failed to establish the existence of a trust.

167. In the bankruptcy court complaint, Shafer Redi-Mix alleged that it provided concrete supplies to Craft, that Craft was paid by his clients for the projects that Shafer Redi-Mix's supplies were used on, and that the payments collected by Craft for those projects are construction funds and, as such, are impressed with a trust pursuant to the MBTFA. Shafer Redi-Mix argued that by failing to pay for the supplies it provided, Craft breached the fiduciary duty owed under the MBTFA. Craft neither admitted nor denied Shafer Redi-Mix's allegation that he had in fact received payment from his clients for the projects that Shafer Redi-Mix's supplies were used on. Craft did, however, admit that Shafer Redi-Mix provided him with supplies on an "open account." Craft also admitted that he incorporated the supplies provided by Shafer Redi-Mix into projects for third parties. Additionally, Craft indicated that he could not identify these customers nor produce any corresponding records, contracts, invoices or receipts because he did not have that information and had no independent recollection from those years. *Id.* at 168.

> The bankruptcy court ruled from the bench in Craft's favor. ... [T]he bankruptcy court found that there was no evidence that Craft was paid for labors and materials provided on a construction project. ...
>
> The proofs ... show only that the Plaintiff delivered concrete and that the Defendant failed to pay for it. Significantly, I find there was no proof that the Defendant ever received any funds from any third party and the statute and the case law teach us that the funds delivered to the Defendant are the subject or res of the trust, not the goods delivered by the Plaintiff. As such, Plaintiff has failed to establish a crucial element of his case, or its case, that is to say the existence of a fiduciary relationship. The failure of proof on this crucial element renders all other disputes immaterial and significantly, the burden never shifted to the Defendant to prove that he lived up to his statutory duties. The Plaintiff never established the existence of a fiduciary duty.

*Id.* at 167-169 (internal quotation omitted). On appeal, the district court affirmed the

bankruptcy court.[9]

Astro's attempt to distinguish *Shafer* is unpersuasive. In its brief on appeal, Astro

argues that:

---

[9] *Cf. Black v. Kendall Electric, Inc. (In re Black)*, No. 07-6409, 2009 WL 6499246, at *1-*3 (Bankr. N.D. Ga. Jan. 12, 2009). In *Black*, the plaintiff initiated an action against Black in Michigan state court seeking to recover the past amount due on an "open account" claiming violations of the MBTFA. In the state-court action, the plaintiff received a default judgment. Black then filed bankruptcy and the plaintiff, in an adversary proceeding, sought a determination that the default judgment it obtained against Black was excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). Although Black did not contest the plaintiff's motion for summary judgment in the adversary proceeding, the bankruptcy court denied the plaintiff's motion. The bankruptcy court held that the plaintiff failed to establish a violation of the MBTFA because it "had not ... demonstrated that its debt is one which is encompassed by the [MBTFA]." *Id.* at *3.

> The [p]laintiff alleges ... that Black ... has used the product supplied by Plaintiff in a building construction project and that Black ... has received funds from the owner or contractor for the project for the material costs associated with the project. However, the [p]laintiff has pointed to no evidence in the record to establish that funds were paid by an owner to ... [Black] that would constitute a building construction fund for purposes of the MB[T]FA.

*Id.* (internal quotations and citations omitted). In reaching that determination, the bankruptcy court relied on an

> affidavit of Judith Gates, an employee ... of the [p]laintiff, state[ing] that the [p]laintiff supplied electrical products and supplies to Black ... on a credit line open account. She further state[d] that Black ... would designate the name and/or address of the party for whom Black ... was performing its services. Attached to the affidavit is a statement of the unpaid orders on the account which lists the invoice date, invoice number, the customer identification or address (presumably identified by Black ... ), and the rolling balance owed to the [p]laintiff. This information, however, does not establish the creation of building contract funds for any of the parties identified by Black.

*Id.* at *3 fn.1. The bankruptcy court, thus, concluded that there was no evidentiary basis for the plaintiff's motion.

> Because the critical element that funds were paid by an owner to [ Black] that would constitute a building construction fund for purposes of the MB[T]FA has not been shown, the Court cannot conclude at this time that this is a trust fund debt, as opposed to a debt owed by [Black] to the [p]laintiff based solely on contract.

*Id.* at *4.

[*Shafer*] does not deal with the court's issue of specificity of construction projects. Rather, that case deals with delivery of supplies alone, not being enough for the [p]laintiff to prevail as it is the payment of the trust res that creates liability. The Bankruptcy Court ruled in the present case that there was no evidence that the Defendant was paid for these projects.

(Appellant Br. at 21-22.) It is true, the district court in *Shafer* rejected "Shafer Redi-Mix['s] argu[ment] ... that Craft was a fiduciary for the materials Shafer Redi-Mix supplied to third parties ... [on Shafer Redi-Mix's theory that] the res of the trust ... would have 'turned into cash,' i.e., the trust was a 'shifting trust.'" *Shafer*, 414 B.R. at 168. The district court in *Shafer*, contrary to Astro's contention, also addressed the issue of specificity and unequivocally determined that—because Shafer Redi-Mix provided "no evidence of monies in fact being collected"—no statutory trust was created under the MBTFA. *Id.* at 172.

There is no dispute that, had there been evidence of monies paid to Craft by contracting parties, the money would have been held in trust by him under the [MBTFA] ...

Because there was no evidence that Craft received funds from any third party (only that third parties received materials from Shafer Redi-Mix) the bankruptcy court concluded that Shafer Redi-Mix never established the existence of a fiduciary duty under the [MBTFA] and, therefore, no fraud or defalcation prevented the debt from being dischargeable ...

[A] line of cases provides that in order for the statutory builders trust to exist, giving rise to the contractor's fiduciary duties, that it must be shown that monetary payment was received from the property owner ...

It is clear to this Court that absent proof of any monies paid into a building contract fund in this case, the predicate for excepting Craft's debt from his discharge in bankruptcy was missing. Shafer Redi-Mix's attempt to fill the evidentiary gap with proof that it delivered materials to contracting parties is unavailing inasmuch as the [MBTFA] impresses a trust upon construction funds, not construction materials. This Court concludes that no statutory trust was activated under the Act and that the bankruptcy court therefore properly determined that the exception set forth in the defalcation provision, 11 U.S.C. § 523(a)(4), was inapplicable.

*Id.* at 172-74.

16

Because the MBTFA only imposes a trust on specific funds, to establish the existence of a trust in the first instance the plaintiff must identify both the specific project in which the supplies were used and the specific payment received by the defendant contractor. Here, the MBTFA is not implicated—the "trust res," or "trust fund" as that term is used in the MBTFA, is not created—unless and until Astro can first demonstrate that payments were received by Slavik on a specific project for which it provided supplies. Without such a showing, Astro cannot establish the existence of a trust nor a fiduciary relationship between it and Slavik.

Astro has simply failed to identify any specific project for which it provided Slavik materials, let alone a specific project for which it provided supplies and Slavik also received payment. Because Astro provided no evidence to identify any specific project, the Bankruptcy Court correctly held that Astro failed to establish the existence of a trust,[10] and

[10] The Bankruptcy Court in this matter specifically held:
[T]he parties agree that Plaintiff purchased building supplies from Defendant between 2003 and 2007. The customer history reports ... disclose specific invoice numbers, dates, and amounts owed, along with a "running balance", but do not disclose any specific projects for which supplies were delivered. Payments made by Defendant to Plaintiff on the "running balance" are also disclosed, but none of those payments identify a specific project or invoice to which the payment is tied. ...

Plaintiff proffers no evidence that Defendant received payments from customers on specific projects, and that those payments were held in trust to be passed on to Plaintiff. The mere fact that Plaintiff is engaged in the business of supplying building materials does not, in and of itself, establish Plaintiff as a trust beneficiary under the Act. ... [T]o become a trust beneficiary under the Act, a supplier or contractor must provide building materials or labor on an identifiable project. The payments arising from the identifiable project are the funds impressed with the trust under the Act. An "open account", "line of credit", or other open-ended credit arrangement whereby a supplier delivers materials to a builder or contractor for use in whatever projects the builder undertakes, and payment is received from the

17

therefore, failed to establish a prima facie case under the MBTFA. The parties here merely transacted business on an "open account" basis where Slavik failed to pay the "running balance" on that account to zero.[11] Although Astro may have an action based on contract, it has not established an action under the MBTFA. As such, the exception set forth in the defalcation provision, 11 U.S.C. § 523(a)(4), is inapplicable.

The next issue presented on appeal is who has the burden of proof on Astro's claim that Slavik violated the MBTFA.

### b. MBTFA Shifting Burden of Proof

In nondischargeability actions brought under 11 U.S.C. § 523(a)(4) alleging violations of the MBTFA, a shifting burden of proof applies. A plaintiff must first establish that it

---

ongoing proceeds generated by the builder or contractor's business, rather than payments from specifically identified projects, does not create a fiduciary obligation between a supplier and a builder.

Plaintiff has failed to establish ... the existence of a trust. Absent the identification of specific trust res, there is no violation of the Michigan Builders Trust Fund Act.

*Frank J. Slavik, III d/b/a F & C Construction v. Astro Building Supplies, Inc. (In re Slavik)*, 426 B.R. 711, 716-18 (Bankr. E.D. Mich. 2010).

[11] Astro's response to Slavik's First Set of Interrogatories provides further support. Interrogatory no. 8 provided:

8. ... how much money, in total, did [Slavik] pay to [Astro] for building supplies that [Astro] allegedly provided to [Slavik]?

Answer: $980,611.09 (Amount tracked in the Accounts Receivable system. Cash transactions were not tracked.) [Slavik] has *another account with us for a specific job.* This account was paid in full ($46,983.56 was the total sales and amount paid).

(Def.'s Mot., Ex. 6 [Docket Text # 35] (emphasis added).) For certain, specific projects Astro created an independent account that was tracked separately from the numerous other purchases Slavik made on the "open account" that tracked costs on a "running balance."

provided supplies to the defendant contractor for use on a specific construction project and that the defendant contractor was paid by its customer for the specific construction project where those supplies were used. Once a plaintiff establishes these elements—once he establishes that a trust exists with regard to the disputed funds—the burden then shifts to the defendant contractor to show that he did not defalcate the funds received in trust. *See In re Little*, 163 B.R. at 502-03 ("Nor does there exist any compelling reason why it would be inappropriate to require the Debtor to account for the trust funds. Such an approach does not substantially undermine bankruptcy's 'fresh start' policy because the beneficiary must as a preliminary matter establish that the debtor did in fact receive funds in a fiduciary capacity."). In other words, it is only after a plaintiff has carried its initial burden of establishing the existence of a trust that the burden shifts to the defendant contractor to account for those payments.

The MBTFA's shifting burden of proof in a nondischargeability action brought under 11 U.S.C. § 523(a)(4) was also addressed in *Shafer*. In that case, "Shafer Redi-Mix argued that Craft bore the burden of showing that he was paid for the work that he performed for the third parties, which he failed to show." *Shafer*, 414 B.R. at 168. Relying on *In re Little*, 163 B.R. 497, the bankruptcy court rejected Shafer Redi-Mix's argument and held that Shafer Redi-Mix had to first establish that a trust was created before the burden shifted to Craft to provide an accounting of how the payments it received were spent. The district court affirmed the bankruptcy court's holding that Shafer Redi-Mix, not Craft, bore the burden of establishing that Craft was paid for the work on a specific project that it provided supplies for.

The bankruptcy court noted that Judge Spector, in his opinion in *In re Little*, 163 B.R. 497 (Bankr. E.D. Mich.1994), extensively and persuasively considered the burden of proof in an MB[T]FA non-dischargeable debt proceeding, assigning the burden of proof to the Debtor Defendant to account for the funds, but only after the Plaintiff has proven the existence of a trust relationship. The court quoted Judge Spector's reasoning that "it was appropriate to require the Debtor to account for trust funds and that doing so did not substantially undermine bankruptcy's fresh start policy because in the first instance the beneficiary must, as a preliminary matter, establish that the Debtor did, in fact, receive funds in a fiduciary capacity."

*Shafer*, 414 B.R. at 169.

Astro, on the other hand, contends that "it is the duty of [Slavik] to prove ... what he has received and what he has done with the money that he received from the customer." (Appellant's Br. at 7.) (*See also* Pl.'s Supp. Resp. at 5 [Docket Text # 47] (according to Astro, "the fiduciary relationship was established when [Slavik] admitted that he was a contractor. At that point, the burden of proof shifts to [Slavik]. If [Slavik] can not account for the funds that he was paid, he is liable to [Astro] for his damages, as a breach of that fiduciary duty").) Astro argues that

[i]n the meeting of creditor's [Slavik] admits that he is the sole owner of F&C Construction, a construction business that primarily performed roofing and siding work. In that testimony, [Slavik] also admitted that he purchased materials for his construction projects from [Astro] and still owed [Astro] about $80,000.00. Finally, in that testimony, [Slavik] admitted that he was paid for all or almost all of the construction projects where he used [Astro's] materials.

At this point of the case, [Astro] has met it's burden, a fiduciary relationship exists and [Slavik] must now meet his burden by accounting for what it is that he did with the money that he received.

(*Id.* at 12-13.)[12] Astro's contention here is erroneous: Slavik does not carry the initial burden

to prove "what he had received." (*Id.* at 7.) Such a contention presupposes that Slavik

received specific payments which were subject to the imposition of a trust under the

MBTFA. As discussed above, the burden does not shift to Slavik unless and until Astro first

demonstrates that Slavik received payment on specific projects that utilized the supplies

that Astro provided. Then, and only then, does the burden shift to Slavik to provide an

account of what he did with those specific funds. Here, Astro has made no such showing,

and its general allegation that Slavik admitted "that he was paid for all or almost all of the

---

[12] Astro relies on *In re Patel*, 565 F.3d 963 to support its proposition that—for purposes of an action under § 523(a)(4)—once a plaintiff shows that the defendant contractor is a "contractor," as that term is defined by the MBTFA, and also shows that it provided materials for use by the defendant contractor, the burden then shifts to the defendant contractor to account for all payments received by him. This interpretation of *In re Patel* is unpersuasive and its reliance on that case is misplaced. Although the Sixth Circuit in *In re Patel* stated that a "contractor" is a fiduciary for purposes of § 523(a)(4), implicit in the holding is that before the contractor has a fiduciary duty to a purported beneficiary, the contractor must have received project funds from a specific project. Thus, if a purported beneficiary has not established that the contractor received supplies for a specific project and also received payment on that specific project, then the MBTFA is never implicated.

    In fact, both the Sixth Circuit and this Court—in the direct appeal from the bankruptcy court—identified a specific project (construction of homes in the Silverleaf subdivision of Pittsfield Township, "the Silverleaf project") and payments that were received (disbursement payments from the Huntington Bank loan). *See In re Patel*, 565 F.3d at 966 (describing the specific project as "homes on some of its land plots in Pittsfield Township," "the Pittsfield construction project," "the home construction project" and identifying the specific payments received as the "requested funds under its line of credit from Huntington National Bank"); *Shamrock Floorcovering Svcs. v. Patel (In re Patel)*, No. 07-13712, 2008 WL 220624 (E.D. Mich. Jan. 25, 2008) (describing the specific project as "a construction project in Pittsfield Township," "a multi-phase new home construction project in the Silverleaf subdivision," "the Silverleaf project," the Silverleaf development," "the Silverleaf construction project" and identifying the specific payments received as "the funding from Huntington Bank"). The district court also stated that "Shamrock did produce evidence that Patel had received construction funds for disbursement to subcontractors ... In sum, it is undisputed that Patel received building funds on the Silverleaf project ... Under the MBTFA, Patel was required to pay Shamrock when building funds came in on the Silverleaf project").

construction projects where he used [Astro's] materials," is insufficient as it provides no means to identify the specific project where payment was received.

## B. Motion to Compel Discovery and Enlarge Time

Astro also filed a motion seeking additional discovery claiming that Slavik had not provided all of the documents that it needed to establish its case. Specifically, Astro requested that Slavik provide his check register from 2003 through 2007 and all customer files for every construction project completed during that time period.

The discovery cut-off date in the adversary proceeding before the Bankruptcy Court was December 31, 2009, a date mutually agreed to by the parties. Although Astro had approximately seven months to complete discovery, it did not file its motion to compel discovery and extend the scheduling of the case until January 28, 2010, well after the discovery cut-off date.

Motions to enlarge time are governed by Federal Rules of Bankruptcy Procedure. Specifically, Rule 9006(b) provides:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Here, because Astro moved to enlarge the time after the expiration of the discovery period, subsection (2) applies. Accordingly, Astro must demonstrate that its "failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(2). Astro made no such showing. Astro merely reiterated its argument that Slavik "has the obligation to establish what he

received from [his] customers" and has failed to do so. (Pl.'s Mot. to Compel ¶¶ 9, 15.) Because Astro failed to comply with rule 9006(b), its motion to extend the schedule of the case was properly denied.

Notwithstanding the procedural bar to extend the schedule of the case, the Bankruptcy Court determined that—after granting Slavik's motion for summary judgment—Astro's motion to compel was moot.

> Plaintiffs argument with regards to discovery fails for the same reason his § 523(a)(4) argument fails: Plaintiff has the initial burden of proving the existence of a trust relationship. Until Plaintiff demonstrates that Defendant received funds held in trust on a specific project for which Plaintiff supplied materials, Defendant is not required to account for how Defendant spent the general revenue that flowed into his business.

*In re Slavik*, 426 B.R. at 718. And, this Court agrees.

> In order to satisfy its initial burden of proof, Plaintiff must establish the existence of a fiduciary duty, that is, Plaintiff must show that Defendant received funds from customers and that those funds were impressed with a trust for Plaintiffs benefit. For purposes of discovery, Defendant is not required to produce records of every project completed between 2003 and 2007 so that Plaintiff can then attempt to identify the projects in which its supplies were used and how payments on those projects were managed. To the contrary, Plaintiff must first identify the projects for which supplies were delivered and for which Defendant had been paid. Defendant would then be required to produce an accounting of how money collected on those projects was spent. Because Plaintiff cannot identify any specific project for which Defendant was holding funds in trust, Defendant need not produce an accounting.

*Id.* at 719. Because Astro failed to satisfy its burden—failed to establish the existence of a trust under the MBTFA—the burden never shift to Slavik to provide an accounting.

## C. Violation of 11 U.S.C. § 727(a)(3)

Section 727(a) of the Bankruptcy Code provides twelve enumerated conditions whereby a debtor may be denied a discharge in bankruptcy. Consistent with the "fresh

start" policy underlying the bankruptcy code, these exceptions to discharge "should be construed strictly against the creditor and liberally in favor of the debtor [while recognizing] that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 226 (Bankr. W.D. Mich. 1997) (internal quotations and citations omitted).

Astro contends that the exception to discharge contained in 11 U.S.C. § 727(a)(3) is particularly applicable here. Section 727(a)(3) operates to deny a debtor a discharge where

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The section, therefore, "requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present." *In re Wazeter*, 209 B.R. at 227. And, the purpose of this exception "is to give ... creditors complete and accurate information concerning the status of the debtor's affairs and financial history and to test the completeness of the disclosure requirements to a discharge." *Id.*

The standard for denial of discharge under § 727(a)(3) was explained by the bankruptcy court in *CM Temporary Services, Inc. v. Bailey (In re Bailey)*, 375 B.R. 410 (Bankr. S.D. Ohio 2007).

> Section 727(a)(3) has been interpreted to apply a shifting burden of proof. The [p]laintiff must establish a prima facie case showing the Debtor failed to keep adequate records. For purposes of § 727(a)(3), the [p]laintiff is not entitled to perfect, or even necessarily complete, records. Instead, the Debtor must provide the [p]laintiff with enough information to ascertain the debtor's

24

financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.

*In re Bailey*, 375 B.R. at 415 (internal quotations and citations omitted).

In its complaint, Astro alleged that Slavik "intentionally and knowingly destroyed or allowed to be destroyed all or most of their significant financial records including bank records and accounts receivable in violation of their affirmative duty to keep, maintain and protect these records contrary to section 727(a)3." (Compl. ¶ 19 [Docket Text #1].) The Bankruptcy Court rejected Astro's claim and held:

> It is unclear from [Astro]'s pleadings exactly what documents [it] believes [Slavik] concealed, destroyed or mutilated, nor can [Astro] explain how those documents would be relevant to a more accurate determination of [Slavik]'s true financial condition.
>
> The Court finds that [Astro] has failed to establish a prima facie case that [Slavik] failed to keep adequate records in violation of 11 U.S.C. § 727(a)(3). [Slavik] had no duty to maintain specific project records documenting where specific supplies were delivered and how those supplies were paid for, because the relationship was an open account with no expectation by either party that supplies would be paid for with specific funds.

*In re Slavik*, 426 B.R. at 720. This Court agrees: Astro argument here relies on its erroneous assumption that Slavik had the burden to prove where the supplies Astro provided were used and how those supplies were paid for. Slavik has no such duty. Because Astro has failed to establish a prima facie case showing that Slavik failed to keep adequate records from which his financial condition might be ascertained, a denial of discharge is unwarranted.

## V. Conclusion

For the reasons stated above, this Court AFFIRMS the Bankruptcy Court's March 26, 2010 order granting Slavik's motion for summary judgment, denying Astro's motion for

summary judgment, and denying as moot Astro's motion to compel and extend the schedule of the case.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: July 13, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 13, 2010, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager